UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MARTIN DANKS,<br><br>        Petitioner,<br>vs.<br><br>MICHAEL MARTEL, as Acting Warden of San Quentin State Prison,<br><br>        Respondent. | Case No. 1:11-cv-00223 LJO<br><br>DEATH PENALTY CASE<br><br>ORDER DISMISSING CLAIM 36; HOLDING CLAIMS 1 THROUGH 30 AND 37 IN ABEYANCE; AND DIRECTING PETITIONER TO SHOW CAUSE WHY CLAIMS 31 THROUGH 35 SHOULD NOT BE DISMISSED AS BARRED BY THE STATUTE OF LIMITATIONS |

HEARING DATE:   October 19, 2011
VACATED

This matter is before the Court on the motion of Petitioner Joseph Martin Danks ("Danks") to hold federal proceedings in abeyance during the pendency of his state exhaustion petition before the California Supreme Court. Respondent Michael Martel, Acting Warden of San Quentin State Prison (the "Warden"), filed a timely opposition and Danks replied. This matter can be decided on the papers without need for a hearing.

**I.     Case Summary**

While serving a 156-year to life term at the California Correctional Institution in Tehachapi ("CCI"), 28 year-old Danks used a bed sheet strip to strangle his 67 year-old cellmate, Walter Holt, between midnight and 1 a.m. on September 21, 1990. Danks had been placed in the cell with Mr. Holt several hours earlier on the evening of September 20, 1990, and reportedly decided to kill him as soon as he was placed in the cell. Danks' 156-year to life term was imposed based a negotiated plea agreement for six first degree murders of homeless men in Los Angeles Koreatown in December 1986 and January 1987. Danks had an extensive history of violence since his January 20, 1987 arrest for those

offenses, which history was introduced during the penalty phase trial of the Holt murder trial, including violence against other patients at Atascadero State Hospital when he was being evaluated for competence to stand trial for the six Los Angeles murders, stabbing another inmate at CCI while he was awaiting trial for the Holt murder, harboring numerous "homemade" shanks and weapons in his cell at CCI, setting fire to his CCI cell, and assaulting a CCI correctional officer. Also, at his trial, he inflicted multiple stab wounds on one of his defense attorneys and testified at penalty proceedings he would stab the other defense attorney if given the opportunity. These attacks on his attorneys were not introduced as aggravating evidence, but the jurors did observe some of his violence towards his attorneys.

Lay and expert witnesses testified at trial about Danks' bizarre behavior, obsession with cleanliness (hence, his loathing of "bums" in Los Angeles), paranoia about having his prison food adulterated, and sadistic ideations. Expert mental health witnesses testified to numerous and varied descriptions: average range of intelligence (I.Q. of 106), severe thought disorder, paranoid schizophrenia, antisocial personality disorder (ASPD), sociopathic tendencies to lie and manipulate, history of polysubstance abuse, afflicted with delusions, easily controlled by schizophrenic delusions because ASPD left him with a dearth of internal controls, "a happy camper" when he was in his sickness because he was full of exotic violent themes and wishes to kill, the belief that he was righteously performing murders, the desire to follow and harm disadvantaged people, organic brain damage, no organic problems, that his competence to be tried could be maintained as long as he was medicated with Haldol (anti-psychotic medication), that he was a continuing homicidal threat, even on Haldol.

## II.  Procedural History

Danks commenced this action on February 9, 2011 with a joint request for a stay of execution and appointment of counsel. The Habeas Corpus Resource Center ("HCRC") was appointed as counsel on February 17, 2011, with three staff attorneys authorized to work on the case. Phase I and Phase II case management conferences were conducted on March 17, 2011 and May 4, 2011, respectively, and budgets were approved for Danks' attorneys to prepare a petition on or before September 15, 2011. At the time of the Phase II case management conference, Danks' represented that he intended to present only exhausted claims in his federal petition. Intervening events described below led Danks to file a

second state habeas petition on September 13, 2011, followed by his timely federal petition on September 15, 2011. This motion followed on September 20, 2011.

**III.      Intervening Events**

New factual and legal predicates for Danks' petition came into existence between May 2011 and September 2011. First, on May 23, 2011, the United States Supreme Court filed *Brown v. Plata*, 131 S. Ct. 1910 (2011), which concludes that the medical and mental health care provided to California inmates fell below standards of decency that inheres in the Eighth Amendment. The period covered by this decision includes the period of Danks' confinement at CCI when he killed Mr. Holt. *Plata* is comprised of two California district court cases, *Coleman v. Brown*, from the Eastern District, and *Plata v. Brown*, from the Northern District. Because release of prisoners was perceived as being a remedy for the inadequate medical and mental health services delivered in California prisons, the respective judges presiding in the Eastern and Northern District cases requested appointment of a three-judge court pursuant to 18 U.S.C. § 3626(a). The same three-judge panel was appointed for both cases and they were consolidated. *Plata*, 131 S. Ct. at 1922. *Plata* affirms the reduction of prisoners in this consolidated case as an appropriate remedy to reduce prison overcrowding and improve the delivery of medical and mental health care to California inmates. *Id.* at 1947.

Second, on September 1, 2011 an order was entered by the California Office of Administrative Hearings granting the petition of the California Department of Corrections and Rehabilitation ("CDCR") for the administration of involuntary anti-psychotic medication to Danks. The petition was filed by the CDCR on July 7, 2011 pursuant the *Keyhea v. Rushen*, 178 Cal. App. 3d 526 (1986) following an incident in which Danks threatened a female correctional officer who attempted to deliver his food. The CDCR alleged Danks was a danger to others and supported this claim with the declaration of CDCR psychiatrist Paul Burton, M.D. Dr. Burton averred:

> Joseph Danks, age 49, is incarcerated for murder. His working diagnosis is schizophrenia, paranoid type. He also suffers from antisocial personality disorder, Hepatitis C viral infection, and Crohn's disease. He has a documented history of mental illness symptoms dating back to before he arrived on Condemned Row. He has required psychiatric hospitalizations in state psychiatric facilities. For several years, he has presented as disorganized, paranoid, agitated, threatening, and hostile. He frequently yells racial slurs and profanities from his cell for hours on end. He consistently refuses to speak with mental health clinicians, attend mental health appointments, or discuss

> medication treatment options.  He also suffers from consistent delusions.  Examples of his delusional topics include government, media, and prison conspiracies.

Second State Petition, Exhibit 3: 7.  Dr. Burton further opined in his declaration, "In my opinion, there is a direct connection between his mental illness and his threatening and aggressive statements and behaviors."  *Id*., Exhibit 3: 8.

In addition to providing a declaration, Dr. Burton also testified at the August 3, 2011 administrative hearing on behalf of the CDCR.  When asked about Danks' history of mental illness, Dr. Burton testified:

> In my review of the records – uh – because I've treated Mr. Danks only since 2009 – in my review of the records, there's evidence that Mr. Danks had mental illness – um – *dating back to his late adolescence.*  Um – the more formal records within the CDCR indicate that – um – Mr. Danks has had evidence of a severe and persistent psychotic mental illness, schizophrenia, for the duration of his incarceration here at – uh – San Quentin.

*Id*., Exhibit 4:14-15 (emphasis added).  At the hearing, Dr. Burton affirmed his opinion of there being a direct connection between Mr. Danks' mental illness and his threat to hit the correctional officer in the head, spit in her face, clinch his fists, and be angry.  *Id*., Exhibit 4: 19.

In response to Dr. Burton's declaration and live testimony, Danks obtained the declaration of Michael B. Coburn, M.D., a psychiatrist who actually was consulted by Danks' attorneys in the capital trial in 1991.  In advance of swearing out his declaration, Dr. Coburn was asked to and did review Dr. Burton's testimony to determine whether Dr. Burton's conclusions were consistent with the preliminary impressions he (Dr. Coburn) formed following his examination of Danks in 1991, that Danks was incompetent to stand trial for capital murder and further diagnostics steps were necessary to obtain an adequate assessment of Danks' then current mental state.  Exhibit 5: 38-39.

**IV.   Relevant Pleadings and Claims**

Danks' original state petition, filed December 8, 2003, raised 32 claims for relief.  His second state petition, filed on September 13, 2011, presents seven claims for relief, all of which are supported by facts alleged in the original state petition, plus the evidence adduced at the *Keyhea* hearing and the fact and implications derived from the *Plata* opinion.  The seventh is of these claims alleges Danks is incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986).

1    Danks' federal petition alleges 37 claims for relief. In the federal petition table of contents,
2 Claims 1 through 30 correspond almost exactly with the table of contents for Claims 1 through 30 in the
3 original state petition. Claim 36 in the federal petition, alleging Danks is incompetent to be executed
4 under *Ford*, corresponds to Claim 7 in the second state petition. Claim 37 of the federal petition, like
5 Claim 31 of the original state petition, alleges cumulative error. Claims 31 through 35 of the federal
6 petition allege constitutional violations for jury instructional errors and deprivation of Danks' right of
7 self-representation. The Court discerns no corresponding state court claims in either the original or the
8 second state petition for the jury instruction or self-representation claims.

9  **V.    Standard for Ordering Abeyance of Federal Proceedings**

10    The parties do not disagree about the standard for ordering abeyance of federal proceedings.
11 Under *Rhines v. Weber*, 544 U.S. 269 (2005), district courts have discretion to hold proceedings in
12 abeyance to permit state court exhaustion of claims filed in a mixed petition in federal court. *Id*. at 276.
13 The high Court observed that "it likely would be an abuse of discretion for a district court to deny a stay
14 and to dismiss a mixed petition if the petitioner [1] had good cause for his failure to exhaust, [2] his
15 unexhausted claims are potentially meritorious, and [3] there is no indication that the petitioner engaged
16 in intentionally dilatory litigation tactics." *Id*. at 278. Where the petitioner satisfies these criteria, "the
17 district court should stay, rather than dismiss, the mixed petition." *Id*.

18    The Warden adds that *Rhines* cautions "abeyance should be available only in limited
19 circumstances," *id.* at 277, and courts should not effectively excuse a petitioner's failure to present
20 claims in the first instance to the state court. The Warden also offers a working definition of "good
21 cause" which *Rhines* did not explain. Acknowledging that "good cause" for abeyance is less stringent
22 than an "extraordinary circumstances" standard, the Warden argues that at a minimum, "good cause"
23 requires a showing of diligence, citing Ninth Circuit authority in another context. *See Johnson v.*
24 *Mammoth Recreations, Inc.*, 974 F.2d 604, 609 (9th Cir. 1992).

25 **VI.    Analysis**

26    There are three categories of claims brought to the Court's attention by Danks' motion for
27 abeyance. First, there is Danks' *Ford* claim. Second, there are the numerous other mental state claims
28 which Danks has augmented by the evidence adduced at the state *Keyhea* proceedings as well as by the

Supreme Court's decision in *Plata*. Finally, there are the five claims which appear never to have been presented to the California Supreme Court alleging instructional errors and denial of self-representation.

### A.     The *Ford* Claim

As the Warden argues, Danks' *Ford* claim is premature. Simply stated under both federal and state law, a determination of whether a defendant is mentally competent to be executed cannot be determined until the defendant's execution date has been set. *Panetti v. Quarterman*, 551 U.S. 930, 943 (2007) and *People v. Leonard*, 40 Cal. 4th 1370, 1430-31 (2007).

In his reply, Danks presents a somewhat tortured analysis. He maintains his *Ford* claim must be raised in a first (federal) petition and then dismissed as premature, citing *Martinez-Villareal v. Stewart*, 118 F.3d 628, 634 (9th Cir. 1997). In the event the habeas relief is denied and an execution date is set, Danks continues, the *Ford* claim can be presented anew without being subjected to the restrictions of a second or successive petition under 28 U.S.C. § 2244(b)(2), citing *id*. and *Stewart v. Martinez-Villareal*, 523 U.S. 637, 645 (1998). Then, contrary to the holding by the Ninth Circuit in *Martinez-Villareal*, Danks also recognizes the authority of *Panetti*, 551 U.S. at 947, that a *Ford* claim filed when it is first ripe is not subject to the second or successive petition bar under § 2244(b)(2).

Whatever Danks' understanding was previously, it is clear now that he understands he didn't need to raise his *Ford* claim only to have it dismissed as premature, but, instead was and is at liberty to raise it without impediment when the claim actually becomes ripe.

Claim 36 of the federal petition is subject to immediate dismissal as premature. When and if the claim becomes ripe, Danks may raise it again and it will not be subject to the statutory requirements for second and successive petitions under 28 U.S.C. § 2244(b)(2).

### B.     Other Augmented Mental State Claims

For the augmented mental state claims, Danks highlights the testimony of Dr. Burton in three respects: 1) Danks has suffered from a serious psychotic illness since adolescence; 2) his mental illness is directly connected to his aggressive behaviors; and 3) anti-psychotic medication is the most medically appropriate means of treating Danks' illness and protecting the safety of others. He argues that this testimony, which he refers to has "the Warden's recent concessions," and the holding in *Plata* provide substantial support for several of the mental-health-related claims in the original state petition, including

1  most notably that the homicide of Mr. Holt at CCI was "the foreseeable result of the State's
2  unconstitutional denial of psychiatric treatment" of Danks. Citing 28 U.S.C. § 2254(b)(1)(A), outlining
3  the exhaustion requirement of federal claims in state court, and *Cullen v. Pinholster*, 563 U.S. ___,
4  ___,131 S. Ct. 1384, 1401 (2011), holding the goal of AEDPA is to promote comity, finality and
5  federalism by giving state courts the first opportunity to review a claim and correct any constitutional
6  violation in the first instance, he argues abeyance is the appropriate procedure to vindicate these
7  principals.

8       Danks also argues he has satisfied all the *Rhines* factors. Given the timing of when the new
9  factual and legal support came into existence, it would have been "impracticable" for him to have
10 presented this information to the California Supreme Court earlier. Therefore, he has shown good cause.
11 Second, he argues his claims have merit, especially as substantiated by testimony of the CDCR
12 psychiatrist (who Danks refers to as "the Warden's psychiatric expert"). He claims that Dr. Burton's
13 testimony essentially agrees with the verified allegations and expert medical opinions presented in the
14 original state petition, that Danks medical records indicated the need for anti-psychotic medication
15 before Mr. Holt's death, that Danks' homicidal behavior were a direct result of his unmedicated
16 condition, and that providing Danks with medically indicated medication would have avoided the capital
17 homicide at CCI. Finally, because of the timing of the filing of this second state petition, he maintains
18 he has been diligent as well as expeditious in raising the new factual and legal information in a second
19 state petition before the California Supreme Court. He adds that the requested abeyance will not create
20 delay, since his second state petition now already is before the state court. He further notes that if the
21 California grants relief, this entire federal proceeding will be moot. In his reply, Danks further informs
22 the Court that the California Supreme Court, on September 29, 2011, directed the State of California to
23 file an informal response to the second state petition on or before October 31, 2011. Danks takes this
24 briefing order as an affirmation that his claims may warrant plenary adjudication in state court if the
25 Warden fails to refute the legal or factual bases supporting the claims. In so arguing he notes that in
26 successor "exhaustion" petitions, such as his second state petition, requests for informal briefing by the
27 California court are not automatic.

28

The Warden's focus with respect to the augmented mental state claims is Danks' failure to meet the *Rhines* good cause requirement.  Essentially, he maintains good cause has not been established because the new factual and legal predicates are duplicative of support for the claims Danks previously presented to the California Supreme Court in the original petition or irrelevant.  First, Danks' mental state has been litigated extensively, all the way back to his state trial. Turning to the Supreme Court decision in *Plata*, the Warden argues the holding isn't about whether the level of mental health care at the time of Danks' incarceration at CCI was constitutionally deficient.  Rather it is an affirmation of the three-judge order requiring reduction of the number of inmates in California prisons. *Plata*, 131 S. Ct. at 1947.  The Warden claims the decision that the mental health care in California State prisons was already adjudicated in *Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal. 1995).  He argues nothing in the *Plata* opinion would affect Danks' prior or pending claims.  With respect to Dr. Burton's testimony, the Warden points out that the entire *Keyhea* proceeding was conducted to determine Danks' *current* competence and need for involuntary medication.  Danks' current mental state, the Warden argues, is not and should not be the subject matter of his habeas claims.  The Warden also takes issue with Danks' position the Warden has conceded that if Danks would have been medicated while he was incarcerated at CCI, the capital homicide would never have happened.  The Warden refers to Danks' argument in this respect as "outlandish" and clarifies that the "Warden has never made such broad statements."

Rather than delay resolution of the exhausted claims, the Warden maintains the unexhausted claims and allegations should be deleted from the federal petition.  He argues that if the facts and legal predicates are "truly newly discovered," Danks would be free to seek to amend those claims into his federal petition following exhaustion in state court, subject to a determination of timeliness and relationship back under *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  Danks responds that the delete, exhaust, amend, and then litigate timeliness process is a cumbersome procedure which can be completely alleviated by the much more expeditious procedure of abeyance.

The circumstances presented in this case convince the Court that Danks has established full compliance with the *Rhines* factors: good cause, merit, and lack of delay.  As Danks argues, good cause exists for him not to have brought the facts of his *Keyhea* hearing or the Supreme Court decision in *Plata* to the California Supreme Court earlier.  The Warden's characterization of *Coleman v. Wilson*, 912

F.Supp. 1282, as independent of *Brown v. Plata* is disingenuous.  *Coleman v. Wilson*, now *Coleman Brown*, is one of the two cases consolidated into *Brown v. Plata*.  Next, contrary to the Warden's argument, the additional support the new factual and legal predicates provide is not merely duplicative of what Danks previously presented.  CDCR psychiatric expert Dr. Burton stated: 1) Danks has suffered from a serious psychotic illness since adolescence, 2) his mental illness is directly connected to his aggressive behaviors, and 3) anti-psychotic medication is the most medically appropriate means of treating Danks' illness and protecting the safety of others.  While this is not a departure from what Danks' own experts have presented in the past, it is quite different from the position taken by the State of California at Danks' trial, on appeal, and on state habeas.  Danks has exaggerated, however, the extent of "the Warden's concession."  Although CDCR may be said to have conceded that Danks has suffered from a serious psychotic illness since adolescence and that appropriate medication can control his aggressive behaviors, that is not the same as conceding to the merits of his claim that lack of adequate anti-psychotic medication was the foreseeable cause of Danks killing Mr. Holt.

Since the augmented claims are the same as the claims in the original state petition, they are no less meritorious augmented than they were when the were pleaded in the first place.  The fact they are now further substantiated certainly does not detract from their merit.  Moreover, the fact that the California Supreme Court has requested the State of California to file an informal response by October 31, 2011 does indicate that the state court intends to give the augmented claims more than summary review with a "postcard" denial.

Timeliness also is established since Danks filed the state petition within two weeks after the conclusion of the CDCR's *Keyhea* proceeding.  The danger of delay also is minimized since the California Supreme Court currently is gearing up for litigation of the second state petition.

**C.   Claims 31 through 35**

As best as the Court can discern, Claims 31 through 35 have not been exhausted.  It also is clear that the one-year limitations period has passed.  Under *Duncan v. Walker*, 533 U.S. 167, 181 (2001), those claims are untimely and not subject to statutory tolling under 28 U.S.C. §  2244(d)(2).  Accordingly, it appears the claims should be dismissed as unexhausted and barred by the one-year statute of limitations.  It is further questionable whether amendment under Federal Rule of Civil Procedure

15(a) to reallege those claims (after they have been exhausted) would be useful because of the stringent requirements for relation-back Danks must satisfy under *Mayle v. Felix*, 545 U.S. at 664 (the original and amended petitions state claims that "are tied to a common core of operative facts"). Since neither party addressed this issue, Danks will be given an opportunity to respond by filing a return to the Court's order to show cause as set forth below.

**VII.    Order**

1. The motion to hold federal proceedings is granted, except as to Claim 1 through 36 of the petition. Abeyance will commence after the Court addresses the viability of Claims 31 through 35. The Clerk is directed not to flag this case as stayed until that time.

2. Claim 36 is dismissed as premature.

3. Danks is ordered to show cause why Claims 31 through 35 should not be dismissed as barred by the one-year statute of limitation. The return should be filed within two weeks from the entry of this order addressing the authorities cited in the body of the order. The Warden's response shall be filed within one calendar week of the filing of Danks' return. The matter thereafter will stand submitted.

IT IS SO ORDERED.

Dated:    October 14, 2011

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Lawrence J. O'Neill
　　　　　　　　　　　　　　　　　　　　　　　　　　Lawrence J. O'Neill
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge